UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REV. RUPERTA LABIOSA-CUETO | ) |
| Plaintiff, | ) |
| V. | ) Civil Action No. 05-11461-GAO |
| VETERANS ADMINISTRATION OF NEW ENGLAND HEALTHCARE SYSTEMS, BOSTON CAMPUS THE HUNTINGTON HOUSE, | ) Formerly: Suffolk County West Roxbury District Court Civil Action No. 0506CV246 |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS**

The defendants respectfully request that this Court dismiss
with prejudice the above-captioned matter pursuant to Rules
12(b)(1) and (6) of the Federal Rules of Civil Procedure.  As
reasons therefore, the defendants respectfully suggest that this
Court lacks subject matter jurisdiction where the plaintiff has
failed to file an administrative claim with the agency (see 28
U.S.C. § 2401(b)) and the plaintiff has failed to state a claim
upon which relief can be granted as she alleges a breach of
contract where no contract exists.

**FACTS**

The Rev. Ruperta Labiosa-Cueto, the plaintiff, filed this
action in the West Roxbury District Court, Suffolk County,  for
the Commonwealth of Massachusetts on or about May 31, 2005.  The
defendants named in the caption to the complaint, "Veterans

Administration of New England Healthcare Systems, Boston Campus
The Huntington House," are all divisions of the United States
Department of Veterans Affairs (VA), a federal government agency.

In the complaint, the plaintiff alleges claims for breach of
contract, negligent emotional distress, intentional emotional
distress, negligence, assault, and loss of consortium.  As
relief, the plaintiff requests damages and attorneys fees.
Although the plaintiff does not specify the amount of damages in
the body of her complaint, attached to her complaint is a
statement of damages.  On this document, the plaintiff alleges
$5,000 in damages for the alleged breach of contract and $20,000
in damages for the remaining claims.

The plaintiff's allegations stem from her stay at the
Huntington House, a program provided by the United States
Department of Veterans Affairs designed to allow veterans, and a
family member of the veteran, who have to travel a significant
distance for medical treatment a basic lodging.  See 38 U.S.C. §
1708.  The plaintiff alleges that in January of 2004 she
accompanied her husband who was transferred from the Worcester VA
Outpatient Clinic to the hospital in West Roxbury, Massachusetts.
Compl. ¶ 3.  The plaintiff further alleges that, being her
husband's primary care giver, she requested and was granted
permission to stay at the Huntington House in Jamaica Plain
during her husband's medical treatment.  Compl. ¶ 4.

2

The plaintiff alleges that she entered into a written contract with social workers for the Huntington House permitting her to stay in a room from January 30,2004 through February 28, 2004.  Compl. ¶ 9.  The defendants' terminated the "contract" without the plaintiff's authority.  Compl. ¶ 13-14.  The plaintiff's belongings were removed from the Huntington House without her permission.  Compl. ¶ 17.

### ARGUMENT

It is the plaintiff's position that the Huntington House "operates as a hotel which provides free lodging for the family members of veterans staying at the hospital."  Compl. 5.  The plaintiff's position, however, is not completely accurate.

The Huntington House "is a housing facility that is located at or near a VA health care facility, that is available for residential use on a temporary basis by eligible persons. . ." 38 C.F.R. § 60.2(1).

An eligible person is defined in the following manner:

    (a)   A veteran with an appointment at a VA health care facility for the purpose of receiving health care or a C&P examination; and

    (b)   A member of the family of such veteran or another person who accompanies such veteran to provide the equivalent of familial support.

38 C.F.R. § 60.3.

"As a condition for receiving temporary lodging under this part, the veteran must be medically stable and must be capable of self-

3

care or be accompanied by a caregiver able to provide the necessary care." 38 C.F.R. § 60.6.

In the case at hand, the plaintiff's veteran husband was admitted to the hospital as an inpatient. See Declaration of Robert Hallett, Chief of Social Work Service for the VA Healthcare System, attached as Exhibit 1. As a result, the plaintiff was not eligible to stay at the Huntington House.

> Family members and/or caregivers may not reside in temporary lodging facilities without the veteran. VHA may not use medical care funds to pay for temporary lodging in the community for family members not accompanied by the veteran. If a veteran staying in temporary lodging with a family member is admitted to an inpatiient bed, alternative lodging arrangements must be made for the family member through a referral to a social worker. Such alternatives are to be at the expense of the family member or through donated funds in a General Post Fund account.

**VHA Directive 2003-009, Attachment A 1d, attached to Exhibit 1.**
When the plaintiff was informed by the defendants that she was no longer eligible to stay at the Huntington House, she refused to leave. Exhibit 1. As a result, the defendants called the VA Police and Security Service to assist in the removal of the plaintiff and her belongings. Exhibit 1.

**I. Breach of Contract**

The plaintiff's first claim is for an alleged breach of contract. Compl. p. 2. In paragraph number 4 of the complaint, the plaintiff states: "The plaintiff, being her husband's primary care giver, requested and was granted permission from her

4

husband's primary physician to stay at the Huntington House in
Jamaica Plain."  In paragraph number 9, the plaintiff states:
"The parties entered into a written contract whereby the
Plaintiff was permitted to stay in a room at Huntington House
from January 30, 2004 through February 28, 2004."  The plaintiff
sets forth the elements for a temporary license to stay.  The
plaintiff does not set forth the elements for a contract as only
promises supported by consideration are enforceable.  See Neuhoff
v. Marvin Lumber & Cedar Co., 370 F.3d 197, 201 (1st Cir. 2004);
see also Hinchey v. Nynex Corp., 144 F.3d 134, 142 (1st Cir.
1998).

Accordingly, in as far as the plaintiff is alleging an
action against the defendants for breach of contract, the
plaintiff fails to allege a claim upon which relief can be
granted.  Consequently, the claim for breach of contract should
be dismissed.

**II.  Negligent Emotional Distress, Negligence, and Loss of
Consortium**

The plaintiff alleges claims sounding in tort: negligent
emotional distress, negligence, and loss of consortium.  The
plaintiff names the "Veterans Administration of New England
Healthcare Systems, Boston Campus The Huntington House" as the
defendants.  These defendants are all divisions of the United
States Department of Veterans Affairs (VA), a federal government

agency.[1]

The United States of America, as sovereign, is immune from suit unless it consents to be sued.  United States v. Mitchell, 445 U.S. 535, 538 (1980).  The Federal Tort Claims Act ("FTCA") constitutes a limited waiver of sovereign immunity for certain tort claims, and its provisions must be strictly construed. Dynamic Image Tech., Inc. v. United States, 221 F.3d 34, 39 (1st Cir. 2000).

The plaintiff does not allege that she filed an administrative claim with the VA.  According to the records of the VA, as of the date of filing this complaint, no administrative claim has been filed by the plaintiff with the VA. See Declaration of Edward J. Lukey, Regional Counsel for the Department of Veterans Affairs, Region 1, attached as Exhibit 2. Under the FTCA, a federal court has no jurisdiction to entertain suit against the United States unless the claimant has presented a claim in writing stating a sum certain.  28 U.S.C. § 2401(b); Coska v. United States, 114 F.3d 319, 322 (1st Cir. 1997). Accordingly, the plaintiff's alleged tort claims should be dismissed as this Court lacks subject matter jurisdiction to hear them.

---

[1]Under the Federal Tort Claims Act, the United States is the only proper defendant to an action sounding in tort.  See 28 U.S.C. § 1346(b).

## III. Intentional Emotional Distress and Assault

The plaintiff also brought suit against the defendants for intentional emotional distress and assault.  The FTCA, however, specifically excepts the federal government from suits for intentional torts.  28 U.S.C. § 2680(a)-(n).  Accordingly, the plaintiff's claims should be dismissed as this Court lacks subject matter jurisdiction to hear them.

### CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court dismiss with prejudice the above-captioned matter pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure as the Court lacks subject matter jurisdiction where the plaintiff has failed to file an administrative claim with the agency (see 28 U.S.C. § 2401(b)) and the plaintiff has failed to state a claim upon which relief can be granted as she alleges a breach of contract where no contract exists.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

Dated: July 11, 2005

/S/ Christopher R. Donato
Christopher R. Donato
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel. No. (617) 748-3303

7

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the defendants' Memorandum in Support of Motion to Dismiss was served by first class mail, postage prepaid, upon the plaintiff's attorney at the following address:

Nicole Reeves, Esquire
Ornell Law Office
592 Main Street
Worcester, MA 01608


Dated: July 11, 2005          /S/ Christopher R. Donato
                              Christopher R. Donato
                              Assistant U.S. Attorney

# Exhibit 1

UNITED STATES DISTRICT COUTRT
DISTRICT OF MASSACHUSETTS

REV. RUPERTA LABIOSA-CUETO )
)
Plaintiff )
)
V. )          CIVIL ACTION NO. 05-11461-GAO
)
VETERANS ADMINISTRATION )
OF NEW ENGLAND HEALTRHCARE )
SYSTEMS, BOSTON CAMPUS )
THE HUNTINGTON HOUSE )
)
Defendant) )
_____ )

DECLARATION

I am Robert Hallett, Chief of Social Work Service for the VA Boston Healthcare System, an entity of the Department of Veterans Affairs (VA), Massachusetts. In this position, among other duties, I am responsible for the Lodge at Huntington House, a temporary lodging facility at the Jamaica Plain campus for patients who have a treatment need to remain near the medical center, but who are not admitted to a hospital ward as inpatients.

The authority for operation of a lodging program comes from VHA Directive 2003-009, Temporary Lodging and Hoptel Programs, a directive from the VA Under Secretary for Health. The program is further implemented locally by Medical Center Memorandum no. 00-013-LM, The Lodge at Huntington House Program. These documents are attached and incorporated herein by reference.

I have been made aware of the civil action filed in the Trial Court of Massachusetts, West Roxbury District Court, No. 0506CV246, in which Plaintiff claims damages for personal injury and property damage. The Plaintiff, Rev. Ruperta Labiosa-Cueto, herself a veteran, is also the wife of a veteran, Rueben Cueto, who was hospitalized as an inpatient. Plaintiff was not herself undergoing treatment for which temporary lodging was appropriate.

A key point to the case relates to VA's insistence that Plaintiff vacate a room in Huntington House which she had been improperly informed she could occupy during her husband's hospital stay. As a spouse, she is allowed by the VA policies cited above to stay in the house when she is a primary caregiver of a patient who is assigned a room, and who is also staying in the room, to facilitate treatment. An example of a patient who might need a room near the medical center, but who would not be admitted as an inpatient, is a patient receiving radiation or chemotherapy treatment for a concentrated but limited period, under circumstances where it is inconvenient to travel from home daily.

**CORRECTED COPY**

Department of Veterans Affairs                          **VHA DIRECTIVE 2003-009**
Veterans Health Administration
Washington, DC 20420                                             **February 7, 2003**

## TEMPORARY LODGING AND HOPTEL PROGRAMS

**1. PURPOSE:** This Veterans Health Administration (VHA) Directive provides policy and guidance for the provision of temporary lodging and Hoptel services.

**2. BACKGROUND**

a. The Department of Veterans Affairs (VA) is mandated to establish a program for providing temporary lodging under section 221(a) of the Veterans Benefits and Health Care Improvement Act of 2000 (Public Law 106-419). These statutory provisions regarding temporary lodging have been codified at Title 38 United States Code (U.S.C.) 1708 and are administered by VHA. Statutory provisions allow VA to use appropriated funds for temporary lodging or hoptel services, including non-VA facilities (i.e., motels, hotels, etc.). *NOTE: Federal Regulations on temporary lodging were published on December 3, 2002.*

b. **Definitions**

(1) **Compensation and Pension (C&P) Examination:** An examination requested by VA's C&P Service to be conducted at a VA health care facility for the purpose of evaluating claims by veterans.

(2) **Temporary Lodging:** Lodging at a temporary lodging facility located at a VA health care facility (generally referred to as a "Hoptel"), or a temporary, non-VA lodging facility, such as a hotel or motel, funded by a VA health care facility.

(3) **Caregiver:** Person who accompanies the veteran to address activities of daily living and other necessary caregiving that the veteran cannot perform.

c. **Charging Fees for Temporary Lodging Services.** Costs for temporary lodging are to be borne by VA. No fees may be charged to veterans or their family members and/or caregivers, living donors, or transplant support persons for use of temporary lodging, including at non-VA facilities (motels, hotels, etc.).

**3. POLICY:** It is VHA policy that temporary lodging may be furnished to eligible veterans receiving VA health care services, C&P examinations or in connection with C&P examinations provided at a VA health care facility. If the veteran is undergoing extensive treatment or procedures, (organ transplant, chemotherapy, surgical intervention, diagnostic work-up, etc.) the veteran and family member and/or caregiver may be furnished temporary lodging, at the discretion of the facility Director, for the duration of the episode of care. *NOTE: This includes the living donor and support person for the transplant procedure, when applicable.*

### THIS VHA DIRECTIVE EXPIRES FEBRUARY 28, 2008

**VHA DIRECTIVE 2003-009    CORRECTED COPY**
**February 7, 2003**

## 4. ACTION

a. **VHA Facility Directors.** VHA facility Directors are responsible for:

(1) Providing temporary lodging services to veterans and their family members and/or caregivers, living organ donors and transplant support persons, as space and funding allow.

(2) Determining whether to utilize unused facility beds, non-VA lodging beds or a combination of both for temporary lodging.

(3) Establishing policy and processes for provision of emergency care for veterans and family members staying in temporary lodging on VA grounds. For veterans lodged in the community, community response procedures need to be followed, such as calling 911.

(4) Publishing local policy memoranda for their temporary lodging programs, outlining eligibility criteria, delegations of authority, and program oversight responsibilities and assuring all facility staff, including new employees and trainees, are familiar with the policy.

(5) Determining that non-utilized VA beds and rooms used for temporary lodging at a VA health care facility do not have a negative impact on the provision of patient care, such as creating a waiting list for inpatient admissions.

(6) Ensuring that decisions concerning temporary lodging are made by the person responsible for coordinating the temporary lodging program at the VA health care facility and that this decision is based on determinations made by the VHA health care provider of the veteran's medical stability, self-care, and ability to stay in an unsupervised setting.

(7) Ensuring that domiciliary beds or other forms of residential treatment or transitional housing (Psychiatric Residential Rehabilitation Treatment Programs, including PTSD and Substance Abuse Residential Rehabilitation Programs, community-based homeless programs, etc.) are not used for temporary lodging. *NOTE: Domiciliaries, community-based homeless programs and transitional housing and/or residential treatment facilities provide housing only as part of comprehensive bio-psychosocial treatment.*

b. **VHA Health Care Providers.** VHA health care providers are responsible for determining the current medical stability of the veteran and determining whether the veteran is capable of self-care at the time of lodging or has a caregiver who can provide care. This determination includes whether the veteran can be lodged in an unsupervised setting. Determination of medical stability, self-care and staying in an unsupervised setting are to be documented in the veteran's medical record.

c. **VHA Staff Overseeing Temporary Lodging and/or Hoptel Programs.** VHA staff overseeing temporary lodging and/or Hoptel programs must ensure:

(1) Temporary lodging facilities on VA grounds are safe, clean and free from hazards.

2

CORRECTED COPY        VHA DIRECTIVE 2003-009
February 7, 2003

(2) Veterans, family members and/or caregivers, living organ donors and transplant support persons being lodged are provided an orientation to the lodging facility, including fire and safety information and whom to call in an emergency.

(3) Adequate privacy in the temporary lodging facility for men and women.

d. **Veterans, their Family Members and/or Caregivers, and Living Organ Donors and Transplant Support Persons.** Veterans, their family members and/or caregivers, and living organ donors and transplant support persons are responsible for:

(1) Completing an application (see Att. A, subpar. 3a).

(2) Abiding by the rules of the VA temporary lodging and/or Hoptel program. If temporary lodging is provided on VA grounds, they must also comply with all facility rules about conduct. They must sign a statement of understanding regarding the following:

(a) No medical or nursing services will be provided in the temporary lodging facility;

(b) No alcoholic beverages or illegal drugs are allowed on VA grounds;

(c) No weapons or explosives may brought onto VA grounds;

(d) Gambling is prohibited on VA grounds;

(e) Soliciting, vending and selling merchandise are prohibited on VA grounds;

(f) Sexual misconduct, destroying property and creating a disturbance are prohibited on VA grounds;

(g) Smoking is allowed only in designated areas.

(h) Any accommodations for safe keeping of valuables (door or locker keys) provided by the VA or the non-VA temporary lodging facility must be returned at the end of the temporary lodging stay.

(3) Failure to abide by the facility's rules may result in being required to leave the temporary lodging facility.

## 5. REFERENCES

a. Veterans Benefits and Health Care Improvement Act of 2000 (Public Law 106-419).

b. Title 38 U.S.C. 501.

c. Title 38 U.S.C. 1708.

d. Title 38 Code of Federal Regulations Part 60.

3

**VHA DIRECTIVE 2003-009    CORRECTED COPY**
**February 7, 2003**

**6. FOLLOW-UP RESPONSIBILITY:** The Office of Social Work Service (110B) is responsible for the content of this Directive. Questions may be referred to the Director, Social Work Service at 202-273-8549.

**7. RESCISSIONS:** None. This VHA Directive expires February 28, 2008.


Robert H. Roswell, M.D.
Under Secretary for Health

Attachment

DISTRIBUTION: CO:    E-mailed 2/11/2003
                          FLD:    VISN, MA, DO, OC, OCRO, and 200 – E-mailed 2/11/2003

4

CORRECTED COPY    VHA DIRECTIVE 2003-009
February 7, 2003

**ATTACHMENT A**

## CRITERIA FOR ELIGIBILITY FOR TEMPORARY LODGING OR HOPTEL

**1. Potentially Eligible to Stay in Temporary Lodging.** The following are potentially eligible to stay in temporary lodging:

a. A veteran with an appointment at a VA health care facility for the purpose of receiving health care or a Compensation and Pension (C&P) examination who meets the criteria specified in 4.b, and

b. A member of the family of such veteran or another person (i.e. caregiver) who accompanies the veteran to provide the equivalent of familial support (hereafter referred to as family members and/or caregivers).

c. When applicable, a living organ donor and the support person who accompanies the donor to the pre-transplant evaluation appointments, the transplant episode, and post-transplant follow-up appointments may be lodged.

d. Family members and/or caregivers may not reside in temporary lodging facilities without the veteran. VHA may not use medical care funds to pay for temporary lodging in the community for family members unaccompanied by the veteran. If a veteran staying in temporary lodging with a family member is admitted to an inpatient bed, alternative lodging arrangements must be made for the family member through a referral to a social worker. Such alternatives are to be at the expense of the family member or through donated funds in a General Post Fund account.

e. Minor children may not be accommodated in temporary lodging facilities on VA grounds, with the exception of Fisher Houses.

**2. Provision of Temporary Lodging and/or Hoptel Services**

a. Temporary lodging may be provided the night before the day of the scheduled care and/or the night of the scheduled care.

b. Non-VA temporary lodging facilities, such as hotels or motels, may be used for temporary lodging, based on availability of local funding as determined by the Director of the VA health care facility. When non-VA temporary lodging facilities are used, arrangements need to be made for transportation to and from the VHA facility for those veterans without a means of transportation.

c. VHA facilities may provide meals or vouchers for meals in the Veterans Canteen Service for veterans staying in temporary lodging. Meals for family members staying in temporary lodging are to be at the expense of the family member, or provided through donated funds in a General Post Fund account.

A-1

**VHA DIRECTIVE 2003-009**          **CORRECTED COPY**
**February 7, 2003**

d. Temporary lodging will be provided on a first-come, first-served basis and on the availability of temporary lodging beds.

e. A sufficient number of beds used for temporary lodging must be handicapped and wheelchair accessible, including those used in community motels and hotels.

**3. To Receive Temporary Lodging.** In order to receive temporary lodging or Hoptel services, a veteran must:

a. **Complete an Application.** A veteran must make an application to the person responsible for coordinating the temporary lodging program at the VA health care facility. For transplant patients, the Transplant Coordinator, or designee, at the Transplant Center is responsible for coordinating the temporary lodging arrangements for the veteran, the family member or caregiver, and, when applicable, the living donor and support person. Application for lodging may be done by letter, electronic means (including telephone, e-mail, or facsimile), or in person.

b. **Provide Information.** The veteran must provide the following information:

(1) Name and Social Security Number;

(2) Date, time and anticipated duration of scheduled care;

(3) Type of scheduled care (e.g., outpatient appointment, outpatient procedure, chemotherapy);

(4) Name, gender, and relationship to the veteran of any person accompanying the veteran;

(5) Requested date(s) for temporary lodging;

(6) Distance, time, and means of travel from the veteran's home to the VA health care facility; and

(7) Circumstances that may affect the time of travel from the veteran's home to VA health care facility (i.e., inclement weather, mountainous terrain, dependence on public transportation, etc.).

**4. Criteria for Eligibility for Temporary Lodging/Hoptel.** In order to receive temporary lodging and/or Hoptel services, a veteran must:

a. At the time of lodging, be determined clinically stable and capable of self-care or be accompanied by a caregiver able to provide the necessary care. VA does not provide nursing or other medical care for temporary lodging beds.

b. Be required to travel either 50 or more miles or at least two hours from their home to the VA health care facility. The VA health care facility Director may make an exception to distance or time provisions based on exceptional circumstances, such as condition of the veteran, inclement weather, road conditions, or the mode of transportation used by the veteran.

**CORRECTED COPY**        **VHA DIRECTIVE 2003-009**
**February 7, 2003**

    c. Be able to stay in an unsupervised setting, as determined by the VA health care provider. Veterans who have a recent history of aggressive behavior or emotional outbursts are not good candidates for temporary lodging. Veterans with behavioral or medical conditions requiring monitoring or supervision must not be accepted for temporary lodging.

    d. For transplant patients, the veteran must be in close proximity to the Transplant Center to receive an available donor organ in cases when a living donor organ is not an option.

**DEPARTMENT OF VETERANS AFFAIRS**
**VA BOSTON HEALTHCARE SYSTEM**

---

MEDICAL CENTER MEMORANDUM NO. 00-013-LM              **APRIL 2003**

---

**THE LODGE AT HUNTINGTON HOUSE PROGRAM**

1. **PURPOSE:** To establish policies and procedures regarding the operations and use of the Lodge at Huntington House (LHH) Program at the VA Boston Healthcare System (VABHS) and to establish eligibility and continued stay criteria for the veteran, his/her family member, significant other or caregiver using the Lodge at Huntington House (LHH) Program.

2. **POLICY:** To provide free, safe and high quality temporary housing to a qualifying veteran, his/her family member, significant other or caretaker while the veteran is receiving medical care at the VABHS, C&P examinations or in connection with C&P examinations provided at a VA health care facility.

3. **RESPONSIBILITY:** The Chief, Social Work Service and the Program Manager of the Lodge at Huntington House are administratively responsible for the LHH. LHH Program Manager, Social Work Service, VHA Health Care providers, Nursing Service, Environmental Management, Patient Services, and Police & Security Service, will provide support services as outlined below.

   A.   Program Manager and Chief, Social Work Service

      1.   Have overall administrative responsibility.

      2.   Keep a schedule of dates and times of room assignments for veterans and families utilizing this program.

      3.   Insure that medical certification is completed as part of the application process.

      4.   Work to insure that the veteran and family receive courteous, timely and high quality services.

   B.  VHA Health Care Providers

      1.   VHA Health Care providers are responsible for determining the current medical stability of the veteran and determining whether the veteran is capable of self-care in an unsupervised setting at the time of lodging, or has a caregiver who can provide such care, prior to completion of the electronic referral form  "Lodge/Huntington House".

      2.   The head nurse/case manager on each inpatient unit may initiate a referral for LHH program by having a staff physician complete the electronic referral form  "Lodge/Huntington House".

3. In the event that the patient is in need of LHH program while receiving medical care, the Primary Care/Specialty Nurse will review and assess the medical evaluation of the veteran.

C.  Environmental Management

1. Environmental Management is responsible for insuring that the temporary lodging facility is safe, clean and free from hazards.

2. Restrooms, kitchens and common areas will be maintained daily. Other cleaning and linen changes will occur after each guest departs. Cleaning service is provided on weekends and holidays by special arrangement if a guest leaves and another guest is in need of that room, and notification is given at least two days in advance.

3. The Program Manager or designee will provide notification to Environmental Management about guest arrivals and/or departures.

D.  Patient Services

1. The scheduled guest should arrive by 3:00 pm.

2. The scheduled guest who arrives outside of this timeframe (8:30 A.M. - 3:00 P.M. Monday through Friday) will be referred to the Administrative Officer on Duty (AOD) up until 6:30 P.M. Monday through Friday. The AOD will be supplied with admission packets. Guests arriving after 6:30 P.M. must report to the Police and Security Service office on the 1st floor at Jamaica Plain campus for keys and orientation packets.

    a.  Administrative Officer on Duty (AOD) will:

        1. Review house rules and regulations with guest and any significant others.

        2. Have guest and significant other(s) sign Letter of Agreement (Attachment A.). This completed paperwork will be forwarded to the Program Manager.

        3. Give key/card and orientation packet to the guest(s).

        4. Send an E-mail message to the Program Manager with guest's date of arrival as well as room assignment if the guest is a walk-in (unscheduled).

        5. Be available at 617-232-9500, extension 5888 or voice pager to provide assistance Monday through Friday until 6:30 P.M.

E.  Police and Security Service

    1.  Issues room keys and orientation packets to guests arriving after 6:30 P.M. Monday through Friday, and on weekends.

    2.  Provides safety/security for each guest by responding to all calls about any problem or concern involving LHH.

    3.  Provides guest with an escort from the Medical Center at Jamaica Plain campus to the LHH after dark when requested.

    4.  Provides security services that may include the removal of unauthorized visitors if necessary.

    5.  Will provide information to make the guest(s) feel safe and comfortable in the LHH.

    6.  Will regularly patrol the LHH building for added security and will verify that outside doors are closed and secure.

## 4. ELIGIBILITY CRITERIA:

A.  The Lodge at Huntington House is a temporary residence for a veteran who is receiving outpatient care the VA Boston Healthcare System.  A significant other/ caregiver is welcome to share a room at the LHH with the veteran.  LHH is not appropriate for someone who needs hospitalization.

The selection criteria will not be affected by age, sex, national origin, race, color, creed, disability or handicap.

B.  Any patient applying to the LHH Program must:

    1.  Have a diagnosis requiring medical care at the VA Boston Healthcare System (VABHS).

    2.  Be recommended by a VABHS physician from whom he/she is receiving care, or be recommended in consultation with a VABHS physician.

    3.  Be capable of self-care in all his/her activities of daily living or be accompanied by a significant other/caretaker who can provide for the veteran's needs.

    4.  Be capable of and willing to abide by the house rules contained in the Orientation Package.

    5.  Be willing and have a home residence to return to at the conclusion of treatment at the VABHS.

C. A guest's family member/significant other or caregiver may stay with the veteran at the LHH only if the family member/significant other is self-sufficient in all activities of daily living, and the veteran is a registered guest or an inpatient at the VABHS.

D. One room only is assigned per guest who shares this one room with a family member/significant other or caregiver. The guest must reside outside a 50-mile radius of the VABHS. All guests are responsible for providing their own food and personal care items.

E. All non-veteran guests must be willing to vacate the room at the direction of the LHH manager as a veteran guest needing the room has the highest priority.

5. **PROCEDURES:** All requests for reservations will be reviewed and coordinated through the Jamaica Plain Campus by the Manager of LHH or designated back-up person. Therefore, all requests must be made in advance. If a medical provider wishes to reserve a room for a potential guest at the LHH, this medical provider is responsible for completing the electronic consult entitled "Lodge/Huntington House". The Program Manager will notify the referring medical provider of the approval/disapproval of the request and other necessary information.

A. Referrals from Network Facilities

1. A VABHS staff physician/medical provider must be the "sponsor" for the guest and submits the request for a room to be reserved at the LHH by entering an electronic consult entitled Lodge/Huntington House.

2. Any VA physician from outside of the VABHS can make a referral to the LHH Program by contacting a VABHS provider, who then submits the consult. Referrals from other VISN 1 Medical Center MDs can be made by using the "Lodge/Huntington House" electronic consult on GUI. The veteran/guest must be scheduled for treatment in VABHS.

3. Evaluation of an unscheduled admission to LHH during off-hours will be conducted by the AOD in conjunction with the POD and if the guest is deemed suitable, the AOD will follow the steps as outlined in section 3(D) above.

B. Guest Orientation:

1. The Program Manager or designed back-up person will provide the orientation to the LHH.

2. During regular business hours, Monday through Friday, 8:30 A.M. – 3:00 P.M., an arriving guest will report to the Program Manager. A review of the request, LHH rules/regulations, and signature of the Letter of Agreement will take place (Attachment A). Guests arriving between 3:00 P.M. and 6:30 P.M. report to the AOD for this activity. After 6:30 P.M. and on weekends, arriving guests report to Police & Security Service Office.

3. When any guest's dates for check-in or check out are determined, notification by e-mail will be made from the Program Manager to Administrative Officer of the Day (AOD), Environmental Management and Police Service & Security Service. To check out from LHH, the guest returns the key/card to the Key Box located in the first floor alcove of the LHH. The Program Manager gets a report from the EMS person about the room as assurance that everything is in working order and the room has been cleaned before the next guest is assigned to that room.

6. **REFERENCES:** VHA Directive 2003-009, Temporary Lodging and Hoptel Programs, dated February 7, 2003.

7. **RESCISSION:** Medical Center Memorandum 00-013, Hop-Tel Program, dated February 2000.

8. **REVIEW DATE AND RESPONSIBILITY:** April 2006, Chief, Social Work Service.

MICHAEL M. LAWSON
Director, VA Boston Healthcare System

Attachment A

# VA Boston Healthcare System
## THE LODGE AT HUNTINGTON HOUSE
### Letter of Agreement

Veteran's Name: _____

Veteran's SSN: _____

Guest's Name: _____

I/we understand that the VA is providing accommodations at the Lodge at Huntington House free of charge, and that I/we understand and agree to the following:

**No medical or nursing services will be provided in the temporary lodging facility;**
**No alcoholic beverages or illegal drugs are allowed on VA grounds;**
**No weapons or explosives may be brought onto VA grounds;**
**Gambling is prohibited on VA grounds;**
**Soliciting, vending and selling merchandise are prohibited on VA grounds;**
**Sexual misconduct, destroying property and creating a disturbance are prohibited on VA grounds;**
**Smoking is allowed ONLY in designated areas (outside of the building);**
**Any accommodations for safekeeping of valuables (door or locker keys) provided by the VA temporary lodging facility must be returned at the end of the stay;**
**Failure to abide by the facility's rules may result in being required to leave the temporary lodging facility.**
**I/we will respect the rights of all guests;**
**I/we will respect the property;**
**I/we will keep noise levels within reason;**
**I/we will provide my/our own meals & personal items.**

I/ we agree to fully comply with the Rules for the Lodge at Huntington House attached to this agreement. This agreement is a license to use the Lodge at Huntington House for which no consideration has been given or promised. Parties specifically agree that they intend that no tenancy arise and that federal and VA procedures, not Massachusetts law, are applicable to this agreement. I/we will leave my/our room and all common areas neat and clean. It is my/our expectation that I/we will remain in the Lodge at Huntington House for the following dates, except for weekends, when I/we may return home.

Arrival Date: _____     Departure Date: _____

**SIGNATURE OF GUEST** _____

Name: _____     Date: _____
Car model & Color: _____
License Plate Number & State: _____

# Exhibit 2

UNITED STATES DISTRICT COUTRT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| REV. RUPERTA LABIOSA-CUETO | ) | |
| | ) | |
| Plaintiff | ) | CIVIL ACTION NO. $OS$ - $11461$ - $GAO$ |
| | ) | |
| V. | ) | |
| | ) | |
| VETERANS ADMINISTRATION | ) | |
| OF NEW ENGLAND HEALTRHCARE | ) | |
| SYSTEMS, BOSTON CAMPUS | ) | |
| THE HUNTINGTON HOUSE | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

DECLARATION

I am Edward J. Lukey, the Regional Counsel for the Department of Veterans Affairs (VA), Region 1, located in Bedford, Massachusetts. My office's authority includes jurisdiction over VA legal matters and cases filed in Massachusetts.

In my capacity as Regional Counsel I am responsible for the handling, investigation, and disposition of administrative tort claims filed with the Department under the provision of the Federal Tort Claims Act for all claims of negligence arising out of alleged acts or omissions of employees of the Department within my jurisdiction, including Massachusetts. 38 CFR sec. 14.501(f)(1), 14.604.

Further, I am responsible for maintenance of records pertaining to current and closed claims, and that all records, both paper and electronic data entries, pertaining to such tort claims as described are routinely kept in my office, and in my computer data system.

I have been made aware of the civil action filed in the Trial Court of Massachusetts, West Roxbury District Court, No. 0506CV246, in which plaintiff claims damages for personal injury.

I have made a thorough search of the records in my office, including files and automated data entries, including searching the data base by the name of the individual plaintiff, and there is no information or indication that any administrative tort claim (SF 95) or similar written notice has ever been filed in the above-captioned case.

I declare under pains and penalties of perjury that the above is true and correct.

_____
Edward J. Lukey
Regional Counsel, Region I
Bedford, MA

July 6, 2005
_____
date